UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

CAMERON STRASSER

**COMPLAINT**

Plaintiff,

Civ. No.:

v.

**JURY TRIAL DEMANDED**

STATE OF NEW YORK, NEW YORK STATE
DEPARTMENT OF CORRECTIONAL SERVICES,
COMMISSIONER BRIAN FISCHER,

CORRECTIONAL OFFICER ROBAR,
CORRECTIONAL OFFICER SMITH,
CORRECTIONAL OFFICER FLUMAN,
All in their Individual and Official capacities,

NEW YORK STATE OFFICE OF THE INSPECTOR GENERAL,
STATE INSPECTOR GENERAL JOSEPH FISCH,
INVESTIGATOR GENERAL A. MISERCOLA,
NEW YORK STATE POLICE DEPARTMENT,
and SUPERINTENDENT HARRY J. CORBITT,
All in their Individual and Official capacities,

Defendants.

---

## PRELIMINARY INTRODUCTION

1. This actions seeks declaratory, equitable relief, compensatory and punitive

    damages, costs and attorney fees for the deprivation of the Plaintiff's

    constitutional rights.

## JURISDICTION AND VENUE

2. Plaintiff brings this action to recover damages for the violation of his civil rights

    under the Eighth and Fourteenth Amendments to the United States Constitution,

    codified at 42 U.S.C. §1983 and 42 U.S.C. §1985(3), and the United States

    Constitution, Amendments Five and Fourteen, for the application of excessive

    force, cruel and unusual punishment, violation of Plaintiff's rights to due process

1

and for violations of privacy.

3.    Jurisdiction is invoked pursuant to 28 U.S.C. §§1331 and 1332 (federal question)
      and §1343 (civil rights).

4.    Declaratory and equitable relief is sought pursuant to 28 U.S.C. §§2201 and
      2202.

5.    Compensatory and punitive damages are sought pursuant to 42 U.S.C. §1983.

6.    Costs and attorney's fees may be awarded pursuant to 42 U.S.C. §1988 and
      Fed.R.Civ.Proc. Rule 54.

7.    As mandated by the Supremacy Clause in relation to actions brought pursuant to
      42 U.S.C. §1983 and 1985, plaintiff does not have to comply with Municipal Law
      Section 50-e, with regard to filing a Notice of Claim, for federal causes of action.

8.    This action properly lies in the Western District of New York, pursuant to 28
      U.S.C. §1343(3) because the claims arose in this judicial district and the
      defendants reside and or do business in Monroe County.

## ADMINISTRATIVE EXHAUSTION

9.    Plaintiff, an inmate, asserts herein a cause of action for violations of his civil
      rights while incarcerated; Plaintiff requested hearings and issued appeals in

2

regard to that claim on July 8th, 2009 and appealed thereafter.

**PARTIES**

10. Plaintiff Cameron Strasser is an individual male, who was at all times relevant herein a resident of the County of Genesee, State of New York.

11. Defendant New York State is a sovereign entity operating and existing within the United States of America and subject to the Constitution of the United States of America.

12. Defendant New York State Department of Correctional Services ("DOCS") is a department and/or entity of the State of New York and is organized and operating within the State of New York.

13. Defendant New York State Office of the Inspector General ("NYSIG") is a department and/or entity of the State of New York and is organized and operating within the State of New York.

14. Defendant New York State Police Department ("NYSPD") is a department and/or entity of the State of New York and is organized and operating within the State of New York.

15. Defendants Correctional Officer Robar ("C.O. Robar") and Correctional Officer Smith ("C.O. Smith") and Correctional Officer R. Fluman ("C.O. Fluman") are

3

Correctional Officers for Defendant New York State DOCS who, while acting within their duties as correctional officers, are state actors acting under the color of state law.

16. Upon information and belief Defendant Investigator General Misercola is a member of Defendant New York State DOC is an investigator who, while acting withing his duties as an investigator general, is a state actor acting under the color of state law.

## FACTS

17. In 2006, Plaintiff was convicted of two charges of Burglary in the 3 rd Degree and received a minimum sentence of four (4) years and a maximum sentence of twelve years (12) of incarceration.

18. Plaintiff's minimum release date is October 16 th, 2010, his conditional release date is October 16th, 2014, and his maximum release date is October 16 th, 2018.

19. However, Plaintiff had just received his first Merit Board in 2009, which would have made him eligible for release in January 2010.

20. While incarcerated, Plaintiff had a good disciplinary record and had no infractions regarding any correctional officers, with particularity to defendant, Correctional Officer Robar ("CO Robar")

4

21.    At approximately 7:00 a.m. on or about June 9, 2009, Plaintiff was residing at
       NYS Franklin Correctional Facility ("Franklin").

22.    On the aforementioned day, Plaintiff was approached by defendant CO Robak,
       who told Plaintiff that defendant's sink was dirty and instructed the Plaintiff to
       clean it.

23.    Plaintiff entered the bathroom and began cleaning the sink when all of the
       sudden he was pushed from behind and turned around to find C.O. Robar
       closing the door and trapping the Plaintiff in the restroom.

24.    C.O. Robar then puled out a pocket knife with a blade about two and a half (2 ½)
       to three (3) inches long and approached the Plaintiff, threatening the Plaintiff not
       to move or say anything or he would kill him.

25.    C.O. Robar then grabbed Plaintiff by the shoulders and forced the Plaintiff to sit
       down on the toilet seat.

26.    Plaintiff begged him to stop, but that just made C.O. Robar move with more
       haste and pulled Plaintiff's pants and underwear down.

27.    C.O. Robar then proceeded to sexually assault Plaintiff by forcefully performing
       oral sex upon the Plaintiff.

5

28.     Terrified, Plaintiff did not move until C.O. Robar attempted to insert his finger into
        the Plaintiff's anus at which point, Plaintiff jumped back and tried to run to the
        door.

29.     C.O. Robar grabbed Plaintiff, wedged himself between Plaintiff and the door and
        again threatened the Plaintiff, stating that if he told anyone he would "make sure
        [he] spent the rest of his life in jail."

30.     After that last threat, C.O. Robar opened the door and the Plaintiff quickly left.

31.     That day, C.O. Robar worked a double shift from 7:00 a.m. until 11:00 p.m., and
        so Plaintiff stayed in his cell to avoid seeing C.O. Robar.

32.     Terrified of C.O. Robar, and believing his death threats, the Plaintiff said nothing
        to the correctional officers that night, yet made sure to avoid showering or
        changing his boxers in an effort to preserve the evidence of his sexual assault
        and wrote a letter to his father detailing the events of that morning.

33.     The next morning, Plaintiff immediately reported the sexual assault to the only
        person he trusted, his teacher, Ms. LePage.

34.     Plaintiff's underwear was taken from him by the correctional officers, and then he
        was transported to the local hospital, Alice Hyde Medical Center, by other
        correctional officers, and was interviewed by a woman from the NYS Police

6

Department and a person from the Inspector General's office, Investigator A. Misercola ("IG Misercola").

35. While at the hospital, Plaintiff gave a statement and submitted to a rape kit exam by the New York State Police Department ("NYSPD").

36. During the rape kit examination, the nurse swabbed his genitals and used a black light attached to a magnifying glass, wherein Plaintiff could plainly see that there was a good amount of white that showed up pursuant to the black light.

37. Plaintiff never received the results from that rape kit analysis, despite his requests to the hospital, who merely replied that since the rape kit was ordered by the NYSPD, it was in the possession of the NYSPD.

38. Thereafter, Plaintiff requested the rape kit analysis conclusions from the NYSPD on numerous occasions, none of which were acknowledged or acquiesced.

39. After the rape kit analysis was finished at the hospital, Plaintiff was transported to Bare Hill Correctional Facility ("Bare Hill"), a neighboring correctional facility down the road from Franklin.

40. Upon his arrival, Plaintiff was immediately subjected to harassment by the correctional officers at Bare Hill; specifically, Correctional Officer Smith ("C.O. Smith") started harassing him claiming that Plaintiff was making false statements

7

about his co-workers and, in collection with the other correctional officers, began telling the inmates false information about the Plaintiff.

41. Eventually, Plaintiff had to be moved to a different part of the facility on June 19th, 2009.

42. The correction officers then conspired to make up a story alleging that Plaintiff was not raped, and instead was falsely accusing C.O. Robar of the sexual assault.

43. Upon information and belief, the NYSPD and the IG never filed any complaints against C.O. Robar for sexually assaulting and raping the Plaintiff.

44. Instead, IG Misercola, began building a case against the Plaintiff for allegedly falsely accusing C.O. Robar of rape, despite having recently received his first Merit Board, and having no motive to falsely accuse C.O. Robar of such a crime.

45. During one of his visits to Plaintiff while he was at Bare Hill, IG Misercola informed Plaintiff that the NYSPD were not going to pursue his complaint at all because he had found out Plaintiff was "lying".

46. Plaintiff wrote to the defendant NYS IG detailing how IG Misercola was harassing the Plaintiff and requested that a new investigator be assigned to his case.

8

47.     The NYS IG did not respond to Plaintiff's letter, and instead informed IG
        Misercola of his complaint and his request for a new investigator.

48.     IG Misercola came back to visit Plaintiff at Bare Hill about a week after Plaintiff
        submitted his request, asking him why he sent the letter and how he was
        harassing the Plaintiff.

49.     Rather, IG Misercola filed a report on July 3rd, 2009 and charged the Plaintiff six
        (6) infractions: interference w/employee; harassment; false statements or
        information; out of place; leaving assigned area; call forward/third party call and
        noncompliance with hearing disposition (all minor infractions that had happened
        prior to the event in question, and were originally not going to be prosecuted).

50.     A Tier III hearing was held on July 8th, 2009, which consisted of IG Misercola
        calling and testifying over the speaker phone; alleged confidential testimony,
        which was contained on a tape recording, whose names were not disclosed, and
        was not heard in the inmate's presence; and testimony from the Plaintiff.

51.     On or about July 9th, 2009, the hearing officer, D. Pheliz, DSS, found against
        Plaintiff stating that the **confidential sources and testimony** revealed Plaintiff
        fabricated the allegation of sexual assault, and that he obtained the C.O. Robar's
        DNA from a "tobacco chew" from the garbage and smeared it upon his genitals.

9

52.    More importantly, the hearing officer based his decision based the tape
        recording to be "deemed reliable upon an independent assessment by this
        hearing officer" and on Plaintiff's "demeanor and body language . . . also
        observed during the hearing " making it "evident that [he] was being less than
        truthful during the hearing."

53.    Plaintiff received two and a half (2 ½) yr penalty of solitaire confinement at the
        Southport Correctional Special Housing Unit ("SHU") and loss of good time for
        two (2) years.  As a result, Plaintiff also lost his Merit Board status.

54.    While Plaintiff was at Bare Hill, all of the correctional officers knew about his
        sexual assault, despite it being confidential information, and would constantly
        taunt him and withhold his meals.

55.    Plaintiff filed several complaints against the various correctional officers.

56.    After receiving his sentence, Plaintiff was moved to SHU, where even those
        correctional officers knew about his sexual assault after simply telling them
        where Plaintiff was originally housed.

57.    In addition, Correctional Officer R. Fluman ("C.O. Fluman") wrote Plaintiff up for
        a Tier II infraction alleging Plaintiff solicited a friend to bring in contraband
        through a letter on October 14th, 2009.

10

58.    C.O. Fluman is the same officer who wrote him up before and works in the
       sexual assault unit, not contraband unit, and therefore had no reason and/or
       authority to write up the Plaintiff for soliciting contraband.

59.    During a hearing for the Tier II allegation, IG Misercola again testified, and the
       hearing officer found Plaintiff guilty.

60.    Plaintiff appealed this determination pursuant to Chapter V, Title 7 N.Y.C.R.R.
       Section 253.8 and won a reversal.

61.    Plaintiff also appealed his determination from the Tier III hearing decision dated
       July 9th, 2009 and received notification that the agency affirmed the
       determination, without making any written elaborations on the affirmation.

62.    Plaintiff has a history of depression and anxiety and  was on medications prior to
       being incarcerated and at the early stages of his incarceration.  However,
       Plaintiff discontinued these medications due to the difficulty of receiving
       medications and the potential penalties imposed in the event of missed dosage.

63.    After Plaintiff was sexually assaulted he suffered emotional turmoil.

11

## FIRST CAUSE OF ACTION

### AS AND AGAINST NYS, DOCS and all individual CORRECTIONAL OFFICERS
### 42 U.S.C. § 1983 EXCESSIVE FORCE CLAIM

64.    Plaintiff repeats and re-alleges by reference each and every allegation contained
       in the above stated paragraphs and incorporates the same as though fully set
       forth herein.

65.    In engaging in the conduct described, by using excessive force to effectuate the unlawful
       sexual assault of Plaintiff, holding Plaintiff at knife point, subjecting Plaintiff to violent and
       threatening behavior and forcibly performing oral sex on the Plaintiff, defendants
       deprived Plaintiff of his civil rights pursuant to 42 U.S.C. § 1983. Further, as
       correctional officers, investigators and police personnel employed by the State of
       New York, the NYS DOC, NYSPD, and the NYS IG, each of the officers were
       acting under the color of State law.

66.    That defendants owed a duty of care to the Plaintiff, as a prisoner in it's
       custody, and that defendants violated their duty of care by the
       aforementioned misuse of authority and power by the defendants was
       egregious and shocking to the conscience.  As a direct result, Plaintiff was
       caused to undergo the humiliation and indignities resulting from being
       compelled to engage in the unnecessary and unwanted physical contact with the
       with defendant, including being trapped and held at knife point and sexually
       assaulted; and was caused, and will continue to undergo and endure severe
       mental anguish, humiliation and economic hardship as a consequence thereof.

67.    Such deprivations were in violation of the rights secured to Plaintiff
       by the Fourth and Fourteenth Amendments of the United States Constitution
       and by 42 U.S.C § 1983.

68.    As a result of defendants deprivation of Plaintiff's civil rights, he has been
       damaged in an amount to be determined at trial.

69.    That Plaintiff demands costs and attorneys' fees pursuant to 42 U.S.C. § 1988.

## SECOND CAUSE OF ACTION

### Deprivation of Plaintiff's Eighth Amendment Rights

70.    Plaintiff repeats and re-alleges by reference each and every allegation contained
       in the above stated paragraphs and incorporates the same as though fully set
       forth herein.

71.    That defendants owed a special duty of care to the Plaintiff, as a prisoner in it's
       custody, and that defendants violated their duty of care by operating, *inter alia,* to
       deprive the plaintiff of important and well-established rights under the Eighth
       Amendment to the United States Constitution, establishing his right to be free
       from cruel and unusual punishment. This misconduct also directly and
       proximately caused Plaintiffs sexual assault and sentencing to solitaire
       incarceration in the Special Housing Unit ("SHU") for two and a half (2 ½) years.

13

72. In engaging in the conduct described above to effectuate the unlawful sexual assault by a correctional officer of the Plaintiff, an incarcerated inmate, while additionally holding Plaintiff at knife point, subjecting Plaintiff to violent and threatening behavior and forcibly performing oral sex on the Plaintiff, and then charged the Plaintiff with Tier III violations and sentenced him to an exasperated and excessive sentence of two and a half (2 ½) years of solitaire confinement, defendants intentionally subjected Plaintiff to cruel and unusual punishment and deprived Plaintiff of his civil rights pursuant to 42 U.S.C. § 1983. Further, that defendants, as correctional officers, investigators and police personnel employed by the State of New York, the NYS DOC, NYSPD, and the NYSIG, each of the officers were acting under the color of State law.

73. That the aforementioned misuse of authority and power by the defendants was egregious and shocking to the conscience. As a direct result, Plaintiff w as caused to undergo the humiliation and indignities resulting from being compelled to engage in the unnecessary and unwanted physical contact with the with defendant, including being trapped and held at knife point and sexually assaulted; and was caused, and will continue to undergo and endure severe mental anguish, humiliation and economic hardship as a consequence thereof.

74. At all relevant times, there was no personal animosity of any sort between the plaintiff and any of the correctional officers, police officers or the Investigator General. Indeed, the plaintiff had no disciplinary problems whatsoever with any of the defendants prior to his sexual assault. Under the circumstances, conduct

14

like the defendants' conduct complained of herein would not ordinarily have occurred in the absence of gross and wanton deficiencies in correctional facility and police training and supervision.

75.   The DOCS Commissioner, personally and/or through his authorized delegates, at all relevant times had final, discretionary authority to promulgate and implement policies and procedures, including policies and procedures as to personnel training and supervision, with respect to his Office's performance of its duties. Under the principles of municipal liability for federal civil rights violations, the Commission (and/or his authorized delegates) constituted a State "policy maker" and owed the plaintiff and the public a duty, breached in this case, to avoid deliberate indifference to the Constitutional rights of persons coming into contact with his Office.

76.   The New York State Police Superintendent, personally and/or through his authorized delegates, at all relevant times had final, discretionary authority to promulgate and implement policies and procedures, including policies and procedures as to personnel training and supervision, with respect to the NYSPD's performance of its duties. Under the principles of municipal liability for federal civil rights violations, the Superintendent (and/or his authorized delegates) constituted a State "policy maker" and owed the plaintiff and the public a duty, breached in this case, to avoid deliberate indifference to the Constitutional rights of persons coming into contact with the NYSPD.

15

77.     The Investigator General, personally and/or through his authorized delegates, at
        all relevant times had final, discretionary authority to promulgate and implement
        policies and procedures, including policies and procedures as to personnel
        training and supervision, with respect to his Office's performance of its duties.
        Under the principles of municipal liability for federal civil rights violations, the
        District Attorney (and/or his authorized delegates) constituted a State "policy
        maker" and owed the plaintiff and the public a duty, breached in this case, to
        avoid deliberate indifference to the Constitutional rights of persons coming into
        contact with his Office.

78.     The foregoing violations of the plaintiff's Constitutional rights constituted
        Constitutional torts and were effected by actions undertaken under color of law,
        statutes and regulations of the State of New York.

79.     Such deprivations were in violation of the rights secured to Plaintiff
        by the Fourth and Fourteenth Amendments of the United States Constitution
        and by 42 U.S.C § 1983.

80.     By reason of the foregoing, defendants are liable for the deprivation of
        Plaintiff's civil rights, for an amount to be determined at trial.

81.     That Plaintiff demands costs and attorneys' fees pursuant to 42 U.S.C. § 1988.

16

## THIRD CAUSE OF ACTION

### Violation of Plaintiff's Procedural Due Process

82.   Plaintiff repeats and re-alleges by reference each and every allegation contained
in the above stated paragraphs and incorporates the same as though fully set
forth herein.

83.   That defendants owed a duty of care to the Plaintiff, as a prisoner in it's custody,
and that defendants violated their duty of care by operating, *inter alia,* to deprive
the plaintiff of important and well- established rights under the Fourteenth
Amendments to the United States Constitution, including the plaintiff's right to be
free from bad-faith prosecution, his right to confront the witnesses against him,
and his rights to a fair hearing and to due process of law. This misconduct also
directly and proximately caused the determination, the plaintiff's sentence and
the plaintiff's two and half (2 ½) years of incarceration in retaliation for alleging a
sexual assault complaint against C.O. Robar.

84.   The foregoing violations of the plaintiff's Constitutional rights, and his sentence
and incarceration for the alleged violations, were further directly and proximately
caused by conduct, chargeable to defendant DOCS, NYSPD, NYSIG and the
individual defendants, amounting to deliberate indifference to the Constitutional
rights of persons coming into contact with DOCS and NYSPD, (1) the institution
and implementation of grossly and recklessly or deliberately inadequate policies,
procedures and regulations of the defendant DOCS, NYSPD, NYSIG and the

17

individual defendants, respecting the safeguarding of the Constitutional rights of

incarcerated persons, the truthfulness of testimony to be offered for the

administrative hearings, the handling and disclosure of exculpatory evidence, i.e.

the rape kit, the proper and competent conduct of criminal investigations and the

avoidance of unjust sentences; and/or (2) a gross and reckless or deliberate

failure by the defendant DOCS and NYSPD to properly instruct, train and

supervise correctional and police personnel as to such matters. In particular, and

among other things:

(a)     The NYSPD at all relevant times did not disclose the contents of the rape
        kit to the Plaintiff, nor did they conduct any further investigations into his
        allegation of sexual abuse by C.O. Robar.

(b)     The NYSPD at all relevant times gave no training or wantonly insufficient
        training to its personnel, respecting the proper working relationship
        between the Police Department and the NYSIG in inmate-staff
        investigations and prosecutions. The NYSPD deficiencies in this respect
        included, but were not limited to, a failure to give appropriate guidance to
        its personnel as to how to respond if confronted by unlawful,
        unconstitutional or otherwise improper conduct on the part of the NYSIG
        and DOCS personnel in the course of such investigations or
        prosecutions.

(c)     The NYSIG's office at all relevant times gave no training or wantonly
        insufficient training to its personnel, respecting the investigatory role of
        the IG in allegations of inmate-staff sexual abuse investigations or
        prosecutions. The NYSIG's deficiencies in this respect included, but
        were not limited to, a failure to properly examine the Plaintiff's rape kit
        results, and assist the NYSPD in investigating the alleged sexual abuse
        rather than the investigating the Plaintiff.

(d)     The DOC's office at all relevant times gave no training or wantonly
        insufficient training to its personnel, respecting the investigatory role of
        the DOCS hearing officer in allegations of inmate-staff sexual abuse
        investigations or prosecutions. The DOC's deficiencies in this respect
        included, but were not limited to, a failure to properly examine the
        Plaintiff's rape kit results, allowing testimony from confidential witnesses
        outside of the presence of the Plaintiff, denying the Plaintiff the ability to
        challenge the testimony and credibility of the confidential witnesses,
        finding against the Plaintiff based upon his body language and demeanor

18

> signifying him being less than truthful, and for DOCS to uphold such determination upon appeal.

> (e)     The NYSPD's deficiencies set forth in subparagraphs (a)--(b) of this paragraph, and the NYSIG's deficiencies as set forth in subparagraphs (b)--© of this paragraph, and DOC's deficiencies as set forth in subparagraph (d) were collectively, and each such deficiency was individually, a substantial factor in bringing about the violations of the plaintiff's Constitutional rights.

85.     At all relevant times, there was no personal animosity of any sort between the plaintiff and any of the correctional officers or the Investigator General. Indeed, the plaintiff had no disciplinary problems whatsoever with any of the defendants prior to his sexual assault. Under the circumstances, conduct like the defendants' conduct complained of herein would not ordinarily have occurred in the absence of gross and wanton deficiencies in correctional facility and police training and supervision.

86.     Such deprivations were in violation of the rights secured to Plaintiff by the Fourth and Fourteenth Amendments of the United States Constitution and by 42 U.S.C § 1983.

87.     By reason of the foregoing, defendants are liable for the deprivation of Plaintiff's civil rights, for an amount to be determined at trial.

88.     That Plaintiff demands costs and attorneys' fees pursuant to 42 U.S.C. § 1983.

19

## FOURTH CAUSE OF ACTION

**Substantive Due Process Under the 14th Amendment: Violation of Privacy**

89. Plaintiff repeats and re-alleges by reference each and every allegation contained in the above stated paragraphs and incorporates the same as though fully set forth herein.

90. That defendants owed a special duty of care to the Plaintiff, as a prisoner in it's custody, and that defendants violated their duty of care by operating, *inter alia,* to deprive the plaintiff of important and well- established rights under the Fourteenth Amendments to the United States Constitution, including the plaintiff's right to privacy, and specifically the right to confidentiality and holding certain information, such as allegations and instances of sexual abuse, private. This misconduct also directly and proximately caused the dissemination of Plaintiff's sexual abuse allegations, the circumstances surrounding Plaintiff's sexual abuse by a correctional officer and Plaintiff's retaliatory treatment in response to his allegations of sexual abuse.

91. That the aforementioned misuse of authority and power by the defendants was arbitrary, egregious and shocking to the conscience. As a direct result, Plaintiff was caused to undergo the humiliation and indignities resulting from the arbitrary dissemination of information to other DOCS employees of him being compelled to engage in the unnecessary and unwanted physical contact with the with defendant, including being trapped and held at knife point and sexually

20

assaulted; and was caused, and will continue to undergo and endure severe
mental anguish, humiliation and economic hardship as a consequence thereof.

92.     At all relevant times, there was no personal animosity of any sort between the
        plaintiff and any of the correctional officers, police officers or the Investigator
        General. Indeed, the plaintiff had no disciplinary problems whatsoever with any
        of the defendants prior to his sexual assault. Under the circumstances, conduct
        like the defendants' conduct complained of herein would not ordinarily have
        occurred in the absence of gross and wanton deficiencies in correctional facility
        and police training and supervision.

93.     The DOCS Commissioner, personally and/or through his authorized delegates,
        at all relevant times had final, discretionary authority to promulgate and
        implement policies and procedures, including policies and procedures as to
        personnel training and supervision, with respect to his Office's performance of its
        duties. Under the principles of municipal liability for federal civil rights violations,
        the Commission (and/or his authorized delegates) constituted a State "policy
        maker" and owed the plaintiff and the public a duty, breached in this case, to
        avoid deliberate indifference to the Constitutional rights of persons coming into
        contact with his Office.

94.     The New York State Police Superintendent, personally and/or through his
        authorized delegates, at all relevant times had final, discretionary authority to
        promulgate and implement policies and procedures, including policies and

21

procedures as to personnel training and supervision, with respect to the NYSPD's performance of its duties. Under the principles of municipal liability for federal civil rights violations, the Superintendent (and/or his authorized delegates) constituted a State "policy maker" and owed the plaintiff and the public a duty, breached in this case, to avoid deliberate indifference to the Constitutional rights of persons coming into contact with the NYSPD.

95.     The Investigator General, personally and/or through his authorized delegates, at all relevant times had final, discretionary authority to promulgate and implement policies and procedures, including policies and procedures as to personnel training and supervision, with respect to his Office's performance of its duties. Under the principles of municipal liability for federal civil rights violations, the District Attorney (and/or his authorized delegates) constituted a State "policy maker" and owed the plaintiff and the public a duty, breached in this case, to avoid deliberate indifference to the Constitutional rights of persons coming into contact with his Office.

96.     The foregoing violations of the plaintiff's Constitutional rights constituted Constitutional torts and were effected by actions undertaken under color of law, statutes and regulations of the State of New York.

97.     Such deprivations were in violation of the rights secured to Plaintiff by the Fourth and Fourteenth Amendments of the United States Constitution and by 42 U.S.C § 1983.

22

98.    By reason of the foregoing, defendants are liable for the deprivation of
       Plaintiff's civil rights, for an amount to be determined at trial.

99.    That Plaintiff demands costs and attorneys' fees pursuant to 42 U.S.C. § 1988.

## FIFTH CAUSE OF ACTION

### 42 U.S.C.§ 1983 MONELL Liability Against DOCS, NYSPD and NYSIG

100.   Plaintiffs incorporate by reference all of the foregoing paragraphs and further
       allege as follows:

101.   Through the deliberate indifference of its final policy makers for the defendants
       DOCS, NYSPD, NYSIG intentionally, maliciously, and with reckless disregard for
       and deliberate indifference to Plaintiff's rights, created and maintained an
       unconstitutional official custom, practice, or policy, by participating directly in the
       intentional sexual assault of Plaintiff by C.O. Robar, the excessive two and a half
       (2 ½) year solitaire sentence, the impediment of filing and investigating Plaintiff's
       sexual assault allegation against C.O. Robar, the bad-faith publication of
       confidential medical records and sexual abuse and violations of Plaintiff's due
       process rights.

102.   The DOCS Commissioner, personally and/or through his authorized delegates,
       at all relevant times had final, discretionary authority to promulgate and

23

implement policies and procedures, including policies and procedures as to personnel training and supervision, with respect to his Office's performance of its duties. Under the principles of municipal liability for federal civil rights violations, the Commission (and/or his authorized delegates) constituted a State "policy maker" and owed the plaintiff and the public a duty, breached in this case, to avoid deliberate indifference to the Constitutional rights of persons coming into contact with his Office.

103. DOCS, by and through the deliberate indifference of its final policymaker, Commissioner Brian Fischer, failed to provide or provided grossly inadequate training and supervision regarding inmate-staff sexual abuse prevention and investigation, the due process procedural protections afforded to inmates, and the substantive due process privacy protections entitled to inmates, despite actual or constructive knowledge that the failure to provide such training, supervision, and discipline had led to or was likely to lead to the constitutional violations described herein.

104. The New York State Police Superintendent, personally and/or through his authorized delegates, at all relevant times had final, discretionary authority to promulgate and implement policies and procedures, including policies and procedures as to personnel training and supervision, with respect to the NYSPD's performance of its duties. Under the principles of municipal liability for federal civil rights violations, the Superintendent (and/or his authorized delegates) constituted a State "policy maker" and owed the plaintiff and the

24

public a duty, breached in this case, to avoid deliberate indifference to the Constitutional rights of persons coming into contact with the NYSPD.

105. NYSPD, by and through the deliberate indifference of its final policymaker, Superintendent Harry Corbitt, failed to provide or provided grossly inadequate training and supervision regarding the due process protections provided to inmates and investigation of inmate-staff sexual abuse, despite actual or constructive knowledge that the failure to provide such training, supervision, and discipline had led to or was likely to lead to the constitutional violations described herein.

106. The Investigator General, personally and/or through his authorized delegates, at all relevant times had final, discretionary authority to promulgate and implement policies and procedures, including policies and procedures as to personnel training and supervision, with respect to his Office's performance of its duties. Under the principles of municipal liability for federal civil rights violations, the NYSIG (and/or his authorized delegates) constituted a State "policy maker" and owed the plaintiff and the public a duty, breached in this case, to avoid deliberate indifference to the Constitutional rights of persons coming into contact with his Office.

107. NYSIG, by and through the deliberate indifference of its final policymaker, State Inspector General Joseph Fisch, failed to provide or provided grossly inadequate training and supervision regarding the due process protections provided to

25

inmates and investigation of inmate-staff sexual abuse, despite actual or constructive knowledge that the failure to provide such training, supervision, and discipline had led to or was likely to lead to the constitutional violations described herein.

108.    The foregoing violations of the plaintiff's Constitutional rights constituted Constitutional torts and were effected by actions undertaken under color of law, statutes and regulations of the State of New York.

109.    By reason of the foregoing, the defendants are liable to the plaintiff, pursuant to 42 U.S.C. § 1983, for an amount determinable at trial.

**WHEREFORE**, Plaintiff prays for relief as follows:

A.    That the Court award damages to him and against the defendants, jointly and severally, in an amount to be determined at trial;

B.    That the Court award punitive damages to him, and against all individual defendants, in an amount to be determined at trial, and that will deter such conduct by the defendants in the future;

C.    For prejudgment interest and recovery of his costs, including reasonable attorneys' fees as stated above;

26

DATED:  December 23, 2009
        Rochester, New York

CHRISTINA A. AGOLA, PLLC

By: _____
    Christina A. Agola, Esq.

    *Attorneys for Plaintiff*
    *CAMERON STRASSER*
    2100 First Federal Plaza
    28 East Main Street
    Rochester, New York 14614
    Telephone: (585) 262-3320
    Fax: (585) 262-3325
    cagola@agolalaw.com

27